IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action File |
| v. | ) ) | No.: 2:11-cv-85-RWS |
| DUNCAN PIPELINE, INC., DPI PROPERTIES, LLC., PRECISION PRECAST, LLC., DPI EQUIPMENT COMPANY, INC., DAWN M. DUNCAN, and WARD R. DUNCAN, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| DUNCAN PIPELINE, INC., | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| v. | ) ) | |
| BARTOW COUNTY, GEORGIA | ) ) ) | |
| Third-Party Defendant. | ) ) | |

**MOTION FOR LEAVE TO FILE COUNTERCLAIM AND BRIEF IN
SUPPORT THEREOF**

**COME NOW** Defendants DUNCAN PIPELINE, INC., DPI PROPERTIES, LLC., PRECISION PRECAST, LLC., DPI EQUIPMENT COMPANY, INC., DAWN M. DUNCAN, and WARD R. DUNCAN, pursuant to Federal Rules of Civil Procedure Rule 13(e) and 15(a)(2), and file this Motion for Leave to File Counterclaim against First National Insurance Company of America ("First National") and Brief in Support Thereof, showing he Court as follows:

## I.  STATEMENT OF FACTS

First National provided performance and payment bonds for Duncan Pipeline, Inc. ("Duncan") for utility work it performed on Mission Road for Bartow County, Georgia ("Bartow") and utility work it performed at Ft. Stewart, Georgia on behalf of a general contractor, Walbridge Aldinger Company ("Walbridge").  See Complaint and Answer generally.  In May and June 2010, First National representative, Jason Stonefeld, contacted representatives of Walbridge and Bartow and directed each of them to stop making progress payments to Duncan Pipeline. (Stonefeld deposition, p. 30-31, excerpts attached hereto as Exhibit "A"; First National 30(b)(6) deposition, p. 37, 59, excerpts attached hereto as Exhibit "B").  First National sent letters, through counsel, to Bartow and Walbridge to advise them "that any and all future contract funds should be paid over to the surety." (Stonefeld Deposition, p. 88).  By telling Bartow to withhold payment from Duncan Pipeline, First National intended that the

funds due Duncan Pipeline "would never go to any other party without [First National's] consent." (First National's 30(b)(6) deposition, pp. 31, 38). However, at the time First National instructed Bartow to withhold further progress payment from Duncan Pipeline, First National knew such progress payments funds could have been "earmarked" for work performed by Duncan's subcontractors or materials provided by Duncan's suppliers. (First National 30(b)(6) deposition, p. 37).    Ultimately, First National made no effort to secure amounts owed to Duncan Pipeline by Bartow until Duncan Pipeline filed a third party complaint in this lawsuit. (First National 30(b)(6) deposition, p. 52).  After directing progress payments be withheld, First National concedes it had no regard for Duncan's business relations with its suppliers and subcontractors. (Stonefeld deposition, p. 74-75).

Related to the money that was being withheld by Walbridge, First National provided the following deposition testimony:

Q.    So that $80,000 that the owner of [the Ft. Stewart] project was willing to pay to Duncan Pipeline prior to the hold notice submitted by Mr. Stonefeld, that earmarked money was never paid to Duncan Pipeline's suppliers, was it?

A.    Correct.

Q.     And in fact, that $80,000 that Walbridge communicated to Mr.
       Stonefeld it was willing to pay has still not been paid by
       Walbridge Aldinger Company to anyone, correct?

A.     Correct.

Q.     And First National Insurance Company of America has taken no
       steps to recover that amount, correct?

       MS. HENDERSON: Objection. Leading.

A.     Correct.

. . .

Q.     In addition to the $80,000, there was a $78,000 balance left on the
       contract between Walbridge Aldinger Company and Duncan Pipeline,
       correct?

A.     Correct.

Q.     And Duncan Pipeline -- excuse me, First National Insurance Company of
       America has taken no steps to obtain that $78,000 to pay down the
       amount they're seeking in this indemnity case, correct?

A.     Other than what I said earlier, to secure those funds, correct.

Q.    When you say to secure the funds, you're referring to Walbridge
      Aldinger -- I mean the instruction to Walbridge Aldinger Company to
      hold the funds, correct?

A.    Correct.

Q.    There's not been any letter written by counsel to Walbridge Aldinger
      Company demanding the balance owed pursuant to the fully performed
      contract by Duncan Pipeline, correct?

A.    Correct.

Q.    And there's never been a lawsuit filed by First National Insurance
      Company as a subrogee or indemnit[ee] for the funds that remain due
      and owing pursuant to Walbridge and Duncan's contract, correct?

A.    Correct.

(First National's 30(b)(6) deposition, p. 74-76).

      First National testified that it had not pursued any indemnity or subrogation

rights against Walbridge or Bartow because:

      we don't have any duty or obligation to pursue those claims, and we don't

      make it a business practice to routinely taking over some sort of

      assignment, or as you said, indemnity, exercise our indemnity rights

      unless it's something very unusual.

(First National 30(b)(6) Deposition, p. 34-36).

Moreover, Liberty Mutual Surety Group handles payment bond claims for both First National and Liberty Mutual Insurance Company of America. (First National 30(b)(6), pp. 15-16). In fact, through Liberty Mutual Surety Group, First National has learned information regarding Duncan Pipeline's lawsuit against Walbridge's payment bond surety, Liberty Mutual Insurance Company of America. (First National 30(b)(6), p 61). First National acknowledges the potential conflict of interest related to Ft. Stewart since Liberty Mutual Surety Group is managing claims against First National and claims against Liberty Mutual Insurance Company of America related to the same Ft. Stewart project, stating:

> Well, there is an inherent conflict if one claims person was handling the claims of both the subcontractor -- in this case the subcontractor and the claims of the general contractor. There may be two different bonding companies, but that one representing both. There's inherent conflict in doing so. So to build a so-called Chinese wall, it is just good business practice to have two separate claims persons handling the two different bonds and the two different accounts. . . . First thing I can think of is conflicting claims against both the GC and the sub where they're making claims against one another, how do you independently investigate, which

is our duty to investigate each claim independently. If you have claims

against both parties, and of course that would include the bonds against

each other, it doesn't make sense. How can you treat each one fairly with

having conflict information like that. That's the best way I can describe

it. It's not good business practice.

(First National 30(b)(6), pp. 66-67).

However, First National produced underwriting materials in this action related

to Walbridge's payment bond with Liberty Mutual Insurance Company of America.

(Stonefeld deposition, p. 125). Moreover, it is undisputed that Stonefeld, who was

managing claims against Duncan's payment bond, exchanged emails with Dennis

Pisarcik, who was managing claims against Walbridge's payment bond. (Stonefeld

deposition, pp. 44-45).

## II.   CITATION OF AUTHORITY AND ARGUMENT

### A.   Leave Must Freely Be Given

Under Fed. R. Civ. P. 13(e), the court may "permit a party to file a

supplemental pleading asserting a counterclaim that matured or was acquired by the

party after serving an earlier pleading." Fed. R. Civ. P. 13(e). Fed. R. Civ. P. 15(a)

declares that leave to amend shall be freely given when justice so requires. Barnett v.

Norfolk & Dedham Mut. Fire Ins. Co., 773 F. Supp. 1529, 1532 (N.D. Ga. 1991).

Amendment pursuant to this Rule  "is to be freely granted especially where an omitted counterclaim is compulsory."  Spartan Grain & Mill Co. v. Ayers, 517 F.2d 214, 220 (5th Cir. 1975).   "While the decision whether to grant leave to amend is entrusted to the trial court's discretion, a proposed amendment should always be granted absent compelling circumstances." Barnett v. Norfolk & Dedham Mut. Fire Ins. Co., 773 F. Supp. 1529, 1532 (N.D. Ga. 1991).  "Unless a substantial reason exists to deny leave to amend, the discretion of the trial court is not broad enough to permit denial." Id. (citing Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)).

Here, through deposition testimony, Duncan Pipeline learned that First National made no effort to collect money that was offered by both Bartow and Walbridge.  In fact, First National withheld in this litigation electronic correspondence exchanged between Walbridge and First National regarding progress payments.  Such emails were produced to Duncan only by Walbridge in the separate action pending the Southern District of Georgia.  It was only after asking Mr. Stonefeld about these email exchanges that Duncan learned of the scope of Walbridge's willingness to pay First National the progress payments it owed Duncan Pipeline.  Thereafter, it was not until May 2012, during First National's 30(b)(6) deposition, that Duncan Pipeline was made aware of First National's complete failure to seek the progress payments owed by Bartow and Walbridge to Duncan Pipeline.

Where a proposed counterclaim is based on information and materials acquired during discovery, subsequent to a party filing of its answer, courts will allow supplementation of the answer by applying Fed. R. Civ. P. Rule 13(e). <u>Deere & Co. v. MTD Holdings Inc.</u>, 2003 WL 22439778, *5 (S.D.N.Y. Oct. 28, 2003). Moreover, the counterclaims for which Duncan is asking leave from the Court to file are based on the same transaction or occurrence as the underlying Complaint in the present action, making the claims compulsory. Similar to the <u>Four Seasons Solar Products</u> case, because these claims would be barred if not brought together in the present action, it would be an injustice for Duncan Pipeline to be denied an opportunity to amend its Answer to include these counterclaims. In addition, since the facts to make out the claims were not available prior to discovery, leave is specifically allowed under Fed. R. Civ. P. Rule 13(e).

B.     <u>Duncan Pipeline Has Stated Valid Claims in its Counterclaim</u>

First National alleges that it acted within its rights granted by the indemnity agreement with Duncan Pipeline when it instructed Walbridge and Bartow to withhold progress payments from Duncan Pipeline.   (Stonefeld Deposition, pp. 36-37). However, pursuant to Georgia's Uniform Commercial Code, specifically O.C.G.A. §§ 11-9-607, 11-9-607, First National, as a secured party pursuant to the subject indemnity agreement, was required to proceed in a commercially reasonable manner

in collecting and enforcing Duncan Pipeline's rights to payment from Bartow and Walbridge.

The Georgia Court of Appeals has explained:

It would be unfair to allow a creditor to deprive the debtor of the possession and use of the collateral for an unreasonable length of time and not apply the asset or the proceeds from its sale toward liquidation of the debt. Moreover, it would be equally unfair to allow a creditor to take possession at all, if the creditor never intended to dispose of the security. For during the period that the debtor is deprived of possession he may have been able to make profitable use of the asset or may have gone to far greater lengths than the creditor to sell.  Once a creditor has *possession* he must act in a *commercially reasonable manner* toward sale, lease, proposed retention, where permissible, or other disposition . . . . If such disposition is not feasible, the asset must be returned, still subject, of course, to the creditor's security interest. *To the extent the creditor's inaction results in injury to the debtor, the debtor has a right of recovery.*

ITT Terryphone Corp. v. Modems Plus, Inc., 171 Ga. App. 710, 712 (1984) (emphasis in original);

Here, First National deprived Duncan Pipeline its right to its receivables from Bartow and Walbridge. However, First National did absolutely nothing in an attempt to collect those receivables. Therefore, pursuant to ITT Terryphone Corporation and Georgia's Uniform Commercial Code, Duncan Pipeline has a right to recovery because of First National's inaction. See also U.C.C. 9-607, Comment 9 ("The secured party's failure to observe the standard of commercial reasonableness could render it liable to an aggrieved person under Section 9-625").

In addition to First National's failure to proceed in a commercially reasonable manner, First National's disregard for Duncan Pipeline's business interest and evidence of the sharing of information between First National and Liberty Mutual Insurance Company supports Duncan Pipeline's claims for tortuous interference with business relationships, breach of the implied duty of good faith and fair dealing, and breach of fiduciary duty.

## III.   CONCLUSION

For the foregoing reasons, Defendants ask that this Honorable Court grant their Motion for Leave to File their Counterclaim. Duncan's proposed Counterclaim is attached hereto as Exhibit "C".

[Signature to Follow]

Respectfully submitted this 13th day of June, 2012.

HALL BOOTH SMITH & SLOVER, P.C.

/s/ *Joel L. McKie*
James H. Fisher, II
Georgia Bar No. 261850
Denise W. Spitalnick
Georgia Bar No. 746210
Joel L. McKie
Georgia Bar No. 585780
*Counsel for Defendants*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
Telephone: (404) 954-5000
Facsimile:  (404) 954-5020

# CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed a copy of the within and foregoing MOTION FOR LEAVE TO FILE COUNTERCLAIM AND BRIEF IN SUPPORT THEREOF with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John V. Burch (GA Bar No. 094900)
Roberta Ann Henderson (GA Bar No. 030252)
Bovis Kyle & Burch, LLC
200 Ashford Center North, Suite 500
Atlanta, GA 30338-2668
(770) 391-9100
(770) 668-0878 Fax
*Counsel for Plaintiff*

Peter Olson
Olson Law, LLC
145 W. Main Street
Cartersville, GA 30120
Phone: (770) 334-2584
*Counsel for Bartow County*

Respectfully submitted this 13th day of June, 2012.

HALL BOOTH SMITH & SLOVER, P.C.

*/s/ Joel L. McKie*
James H. Fisher, II
Georgia Bar No. 261850
Denise W. Spitalnick
Georgia Bar No. 746210
Joel L. McKie
Georgia Bar No. 585780
*Counsel for Defendants*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
Telephone: (404) 954-5000
Facsimile: (404) 954-5020