# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action File No.: 2:11-cv-85-RWS |
| v. | ) ) ) | |
| DUNCAN PIPELINE, INC., DPI PROPERTIES, LLC., PRECISION PRECAST, LLC., DPI EQUIPMENT COMPANY, INC., DAWN M. DUNCAN, and WARD R. DUNCAN, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| DUNCAN PIPELINE, INC., | ) ) ) | |
| Third-Party Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| BARTOW COUNTY, GEORGIA | ) ) ) ) | |
| Third-Party Defendant. | ) | |

**DEFENDANTS' COUNTERCLAIM AGAINST FIRST NATIONAL INSURANCE COMPANY OF AMERICA**

1

**COME NOW** DUNCAN PIPELINE, INC., DPI PROPERTIES, LLC., PRECISION PRECAST, LLC., DPI EQUIPMENT COMPANY, INC., DAWN M. DUNCAN, and WARD R. DUNCAN (collectively referred to hereinafter as "Duncan"), Defendants in the above-styled civil action, by and through their counsel of record, and pursuant to Federal Rules of Civil Procedure Rule 13 file this, their Counterclaim, showing this Honorable Court as follows:

1. First National Insurance Company of America ("First National") filed the above-styled action with this Court, and has, thus, submitted to the jurisdiction and venue of this Court.

2. First National provided performance and payment bonds for Duncan on a project on which Duncan Pipeline, Inc. ("Duncan Pipeline") served as a subcontractor to general contractor, Walbridge Aldinger Company ("Walbridge").

3. First National provided performance and payment bonds for Duncan Pipeline on a project on which Duncan Pipeline, Inc. ("Duncan Pipeline") furnished materials and labor in Bartow County, Georgia ("Bartow").

4. Pursuant to direction by First National, Walbridge and Bartow withheld payment to Duncan Pipeline for work completed by Duncan Pipeline.

5. In June of 2010, Bartow sent a letter to First National seeking direction as to where to pay $68,041.18 it conceded it owed Duncan Pipeline, but First National failed to respond.

6. Thereafter, First National made no commercially reasonable effort to collect the money from Bartow that had been held from Duncan as instructed by First National.

7. Duncan Pipeline failed to make timely payment to its suppliers and subcontractors because of First National's direction to Walbridge and Bartow, and Walbridge's and Bartow's compliance therewith, to withhold payment to Duncan Pipeline.

8. Also in June of 2010, Walbridge was prepared to pay Duncan Pipeline $80,784.55 with an additional $80,000 to follow.

9. Instead of paying Duncan Pipeline as planned, Walbridge held the money pursuant to First National's instructions.

10. Additionally, Duncan Pipeline made First National aware that it sought additional compensation for work it completed pursuant to its contract with Walbridge.

11. First National made no commercially reasonable effort to collect any money from Walbridge, including the approved $80,000 payment application that Walbridge was willing to pay in June 2010.

12. First National's instruction to Walbridge and Bartow to withhold payment from Duncan Pipeline took place without prior notification to Duncan Pipeline or consent of Duncan Pipeline.

13. Because Duncan Pipeline was no longer receiving progress payments owed to them pursuant to its contract with Bartow and Walbridge, it was unable to make further payments to suppliers and subcontractors.

14. In directing the withholding of progress payments and failing to make effort to collect same on Duncan Pipeline's behalf, First National acted without regard for Duncan Pipeline's business relations with Walbridge, Bartow, or its suppliers and subcontractors.

15. First National, acting through Liberty Mutual Surety Group, exchanged information with Walbridge's payment bond surety, Liberty Mutual Insurance Company of America.

16. By sharing such information, First National breached duties it owed to Duncan.

17. First National's actions damaged Duncan Pipeline's creditworthiness and hampered Duncan Pipeline's ability to attain bonding capacity required to receive future work.

18. First National's failure to mitigate in these instances has caused Duncan to incur interest charges and other damages over and above that which it otherwise would have incurred.

## COUNT I: TORTIOUS INTERFERENCE

19. Duncan realleges the allegations of the Paragraphs 1-18 as if expressly set forth herein.

20. First National's actions were improper, wrongful and without privilege.

21. First National acted purposely, with malice and intent to injure Duncan.

22. First National's actions caused Duncan to breach its obligations to its subcontractors and suppliers, and caused Walbridge and Bartow to breach their respective contracts with Duncan Pipeline.

23. First National's tortious conduct proximately caused damage to Duncan Pipeline.

## COUNT II: NON-COMPLIANCE WITH UNIFORM COMMERCIAL CODE

24. Duncan realleges the allegations of the foregoing Paragraphs 1-23 as if expressly set forth herein.

25. First National's actions of inducing Walbridge and Bartow to withhold payments that would have otherwise due to Duncan while at the same time failing to pursue those amounts due, disputed and undisputed, to reduce Duncan's principal and interest obligation to First National was commercially unreasonable pursuant to Georgia's Uniform Commercial Code.

26. First National's actions breached its duty to proceed in a commercially reasonable manner in the collection and enforcement of amounts owed to Duncan Pipeline as required by O.C.G.A. § 11-9-607 or to dispose of the subject receivables in a commercially reasonable manner as required by O.C.G.A. § 11-9-610.

27. Pursuant to O.C.G.A. § 11-9-625, Duncan Pipeline is entitled to recover damages from First National due to First National's non-compliance with Article 9 of Georgia's Uniform Commercial Code.

## COUNT III: BAD FAITH

28. Duncan realleges the allegations of the foregoing Paragraphs 1-27 as if expressly set forth herein.

29. An implied duty of good faith and fair dealing existed in the contract between First National and Duncan.

30. First National endeavored to exercise its authority under the surety contract in such a way so as to secure an economic advantage to the detriment of that of Duncan Pipeline.

31. First National failed to communicate with Duncan about its claims and First National's actions, as would be expected in similar surety arrangements.

32. First National's acts of bad faith caused Duncan to suffer economic damages, including loss bonding capacity, decreased creditworthiness, and increased damages in this action.

### COUNT IV: BREACH OF FIDUCIARY DUTY

33. Duncan realleges the allegations of the foregoing Paragraphs 1-32 as if expressly set forth herein.

34. First National was situated such that it could exercise influence and control over the financial welfare of Duncan Pipeline, thus a fiduciary relationship existed between Duncan Pipeline and First National.

35. First National breached its fiduciary duty by pursuing its own interests at the expense of Duncan Pipeline's.

36. First National's breach of fiduciary duty caused Duncan Pipeline to incur damages it otherwise would not have incurred.

### COUNT V: PUNITIVE DAMAGES

37. Duncan realleges the allegations of the foregoing Paragraphs 1-36 as if expressly set forth herein.

38. First National's conduct, described in detail above, shows willful misconduct, malice, fraud, wantonness, oppression, and an entire want of care raising a presumption of conscious indifference to the consequences of its conduct.

39. First National's conduct, as described above, was performed with a specific intent to harm Duncan Pipeline.

40. First National's conduct, as described above, has proximately cause Duncan Pipeline to suffer damages.

41. Pursuant to O.C.G.A. § 51-12-5.1, Duncan is entitled to an award of punitive damages in an amount to be determined by a jury so as to punish and penalize First National and deter it and others from engaging in similar conduct in the future.

### COUNT VI – ATTORNEYS FEES UNDER O.C.G.A. § 13-6-11

42. Duncan Pipeline hereby alleges and incorporates by reference paragraphs 1 through 41 as though fully stated herein.

43. First National has acted in bad faith, has been stubbornly litigious, and caused Plaintiff unnecessary trouble and expense.

44. As such, Duncan Pipeline is entitled to attorneys fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE**, Duncan respectfully requests that this Court enter judgment against First National, and as follows:

    a) That Duncan be entitled to any and all damages allowed under the law, including general, compensatory, nominal, incidental, consequential, statutory, punitive and exemplary damages, as well as attorneys' fees and costs; and

    b) That this Court grant Duncan such other and further relief as it deems just.

Respectfully submitted this 13th day of June, 2012.

                HALL BOOTH SMITH & SLOVER, P.C.

                /s/ *Joel L. McKie*
                James H. Fisher, II
                Georgia Bar No. 261850
                Denise W. Spitalnick
                Georgia Bar No. 746210
                Joel L. McKie
                Georgia Bar No. 585780
                *Counsel for Defendants*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
Telephone: (404) 954-5000
Facsimile:  (404) 954-5020

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed a copy of the within and foregoing DEFENDANTS' COUNTERCLAIM AGAINST FIRST NATIONAL INSURANCE COMPANY OF AMERICA with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

John V. Burch
Roberta Ann Henderson
Bovis Kyle & Burch, LLC
200 Ashford Center North, Suite 500
Atlanta, GA 30338-2668
(770) 391-9100
(770) 668-0878 Fax
*Counsel for Plaintiff*

Peter Olson
Olson Law, LLC
145 W. Main Street
Cartersville, GA 30120
Phone: (770) 334-2584
*Counsel for Bartow County*

Respectfully submitted this 13th day of June, 2012.

HALL BOOTH SMITH & SLOVER, P.C.

*/s/ Joel L. McKie*
James H. Fisher, II
Georgia Bar No. 261850
Denise W. Spitalnick
Georgia Bar No. 746210
Joel L. McKie
Georgia Bar No. 585780
*Counsel for Defendants*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
Telephone: (404) 954-5000
Facsimile: (404) 954-5020

11